UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

ROBERT A. HALSTEAD, JR.,
Plaintiff-Appellee,

v.

No. 95-3199

FEDERAL CROP INSURANCE
CORPORATION; UNITED STATES
DEPARTMENT OF AGRICULTURE,
Defendants-Appellants.

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Malcolm J. Howard, District Judge.
(CA-94-76-4-H1)

Argued: January 28, 1997

Decided: April 4, 1997

Before RUSSELL and WILKINS, Circuit Judges, and
OSTEEN, United States District Judge for the Middle District of
North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

COUNSEL

ARGUED: Stephen Aubrey West, Assistant United States Attorney,
Raleigh, North Carolina, for Appellants. Myron Tayloe Hill, Jr.,
BROWNING & HILL, L.L.P., Greenville, South Carolina, for Appel-
lee. ON BRIEF: Janice McKenzie Cole, United States Attorney, Bar-

bara D. Kocher, Assistant United States Attorney, Raleigh, North Carolina, for Appellants. Robert A. Cox, Jr., BROWNING & HILL, L.L.P., Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Robert Halstead is a tobacco farmer in Pitt County, North Carolina. In 1992, he purchased a general insurance policy from the Federal Crop Insurance Corporation ("FCIC") to cover nine units, or approximately 65 acres, of tobacco crop. Under the terms of the policy, the FCIC agreed to insure against unavoidable loss caused by adverse weather conditions so long as Halstead harvested his crop by any recognized good farming practice. In addition, the policy required that the stalks of any tobacco subject to a claim not be cut without the FCIC's approval.

On July 20, 1992, Halstead reported anticipated losses on units 105 and 107 due to hail damage suffered during a storm. FCIC inspectors surveyed the damage and determined that it was not severe. In their report, the inspectors noted that Halstead should have been able to produce the appraised amount of tobacco from these units if no further damage occurred.

During August 1992, however, over twelve inches of rain fell in Pitt County within a nine-day period. The United States Department of Agriculture declared Pitt County a contiguous disaster area. Farmers in the area, including Halstead, experienced great difficulty in harvesting their tobacco crops due to the wetness of the fields. After his attempts to use an automatic harvester failed, Halstead switched to a manual harvester, only to find that his efforts were futile because the manual harvester also became stuck in the mud. Halstead later testi-

2

fied that he employed manual laborers and tried harvesting the tobacco by hand.

On September 7, 1992, Halstead contacted his insurance agent to report losses to units 101, 103, 105, 106, and 107 due to his inability to harvest because of the wet weather. The FCIC sent two inspectors, Bealie Martin and Mitchell Buck, to appraise the damage. At that point, Halstead had harvested all but twelve of the sixty-five insured acres of tobacco.

The inspectors found that the stalks on unit 103 had been cut by the owner of the land without Halstead's knowledge. On the units that had not been cut, units 101, 105, 106 and 107, the inspectors found that small areas had been damaged by excessive rainfall, but that most of the tobacco had suffered heat damage from neglect. In support of their conclusion, the inspectors noted that there were no noticeable ruts in the field to indicate that Halstead had tried to harvest the tobacco during the wet weather.

In a letter dated December 2, 1992, the FCIC denied Halstead indemnity on all five units based on his failure to follow good farming practices and give timely notice of loss. Halstead twice appealed the decision in informal hearings held before FCIC hearing officers in Rosslyn, Va. The first hearing officer was from the midwest and Halstead was forced to explain to him how flue-cured tobacco is harvested. Halstead and his insurance agent testified at both hearings, but no witnesses appeared on behalf of the FCIC. Therefore, Halstead and the hearing officers did not have the opportunity to question the inspectors concerning their reports.

Halstead's appeals were denied for the following reasons: 1) Halstead failed to follow recognized good harvesting practices because he allowed the crop to deteriorate in the field without attempting to harvest by alternative methods; 2) Halstead failed to meet the policy requirement to provide notice of loss within 72 hours of the discovery of probable loss; and 3) Halstead failed to obtain written consent from the FCIC before destroying the unharvested crop on unit 103.

Having exhausted his right to administrative appeal, Halstead filed a complaint in the United States District Court for the Eastern District

3

of North Carolina on June 16, 1994 pursuant to 7 U.S.C. § 1508(f). The district court granted the FCIC's motion to hear the case on the briefs, but decided to hold a limited "evidentiary hearing" in order to "better understand the facts in this matter."

The hearing lasted less than one day. Halstead and his insurance agent again testified. Halstead also presented two new witnesses, a neighbor and a summer employee, both of whom supported Halstead's claim that he attempted to harvest the crop by hand. Mitchell Buck, one of the inspectors, appeared on behalf of the FCIC.

On October 26, 1995, the district court issued an order finding that the decisions of the administrative agency concerning the issues of untimely notice and Halstead's failure to follow good farming practices were "arbitrary and capricious" and not supported by substantial evidence. The district court reversed the agency's denial of indemnity on units 101, 105, 106, and 107. On unit 103, however, the district court upheld the FCIC's denial of indemnity because the stalks had been cut without the consent of the agency. Halstead was awarded $37,674.14 plus interest.

The FCIC appeals the district court's decision on two grounds. First, the FCIC claims that the district court erred in conducting an evidentiary hearing rather than relying on the administrative record. Second, the FCIC claims that the district court erred in finding that the agency's decision that Halstead did not give timely notice was "arbitrary and capricious."

The parties do not dispute that the applicable standard of review under the Administrative Procedure Act ("APA") is whether the FCIC's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."[1] They vigorously disagree, however, whether the district court overstepped the boundaries of its scope of review by holding an evidentiary hearing. In deciding whether an agency's decision was "arbitrary and capricious," a reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a

_____

[1] 5 U.S.C.A. § 706(2)(A) (West 1996).

4

clear error of judgment."**2** Although the Supreme Court has held that "the focal point for judicial review should be the administrative record already in existence,"**3** it has not forbidden the examination of extrinsic evidence.

The Fourth Circuit has not established guidelines concerning the proper scope of review under the APA, and we decline to do so today. The Ninth Circuit, however, has held that a reviewing court may go outside the record to obtain background information or evidence of whether the agency considered all relevant factors or fully explicated its course of conduct.**4** The reviewing court is limited in its use of this evidence. As noted by the Supreme Court in Florida Power & Light Co. v. Lorion: "If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."**5** Unfortunately, the Court failed to offer an example of "rare circumstances" and our case law provides little guidance.**6**

Confining reviewing courts to the agency record rests on an important practical consideration. The Seventh Circuit strictly limits the use of evidentiary hearings because "[a]dministrative agencies deal with technical questions, and it is imprudent for the generalist judges of the federal district courts and courts of appeals to consider testimonial and documentary evidence bearing on those questions unless the evidence has first been presented to and considered by the agency."**7** Hal-

---

**2 Citizens to Preserve Overton Park, Inc. v. Volpe**, 401 U.S. 402, 416 (1971).
**3 Camp v. Pitts**, 411 U.S. 138, 142 (1973) (per curiam).
**4 Asarco, Inc. v. United States Environmental Protection Agency**, 616 F.2d 1153, 1160 (9th Cir. 1980).
**5** 470 U.S. 729, 744 (1985).
**6 Compare McGlone v. Heckler**, 791 F.2d 1119, 1120 (4th Cir. 1986) (allowing consideration of additional evidence submitted to district court), with Maxey v. Califano, 598 F.2d 874, 876 (4th Cir. 1979) (remanding to agency for examination of relevant evidence).
**7 Cronin v. United States Department of Agriculture**, 919 F.2d 439, 444 (7th Cir. 1990) (evidentiary hearing only appropriate in "emergency").

stead's case, however, does not present a technical question which must be left to the expertise of the FCIC. The main issue is witness credibility. Either Halstead attempted to harvest the tobacco by any means possible and contacted his insurance agent as soon as he was aware of the extent of the damage to the crop, demonstrating his use of "good farming practices" and the giving of timely notice, or he did not, resulting in a breach of his insurance policy.

Over three years after Halstead's initial claim the district court was the first reviewing body to address all of the relevant factors in the dispute.[8] In order to conserve government resources, and in the interest of equity, we affirm the district court's use of an evidentiary hearing and its overall disposition of the case.

<u>AFFIRMED</u>

_____

[8] We take judicial notice that the procedure for appeals from adverse decisions by FCIC agents recently has been changed to allow for local levels of appeal and mediation prior to an appearance before a hearing officer from the National Appeals Division. <u>See</u> National Appeals Division Rules of Procedure, 60 Fed. Reg. 67298, 67316 (1995) (to be codified at 7 C.F.R. pt. 780).